**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| YOLANDA G. DEL RIO, § <br> Plaintiff, § <br> v. § <br> § <br> NANCY A. BERRYHILL, § <br> **Acting Commissioner of Social Security** § <br> **Administration,** § <br> Defendant. § | | CIVIL NO. <br> 3:16-CV-00489-RFC |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff, Yolanda G. Del Rio, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

**PROCEDURAL HISTORY**

On June 19, 2014, Plaintiff filed her application for DIB, alleging a disability onset date of November 29, 2013. (R:182-89). Her application was denied both initially and upon reconsideration. (R:99-100). Plaintiff's requested hearing was conducted on April 7, 2016. (R:44-57). The Administrative Law Judge ("ALJ") issued a decision on June 1, 2016, denying benefits. (R:18-43). On September 27, 2016, the Appeals Council denied review. (R:1-8).

**ISSUES**

Plaintiff presents the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's subjective complaints. (Doc 24:4).

2. Whether the ALJ properly evaluated the medical opinion evidence. (Doc 24:8).

3. Whether the ALJ's residual functional capacity ("RFC") finding is supported by substantial evidence. (Doc. 24:2).

**DISCUSSION**

*I. Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (*per curiam*). Substantial evidence must be "more than a mere scintilla[,]" but can be less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The Commissioner's findings will be upheld if supported by substantial evidence. *Masterson*, 309 F.3d at 272. A finding of no substantial evidence will be made "only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (*per curiam*) (citations and internal quotations omitted).

In applying the substantial evidence standard, the court may "not re-weigh the evidence, try the questions *de novo*, or substitute [its own] judgment for the Commissioner's, even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272 (citation omitted). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted).

*II. Evaluation Process*

To evaluate disability, the ALJ engages in a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment ("MDI"); (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.[1] If, at any step, the Commissioner finds that the claimant is or is not disabled, the five-step inquiry ends. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The ALJ must determine the claimant's RFC, the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p. To make this determination, the ALJ must consider all the record evidence and the claimant's abilities despite her physical and mental limitations. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005). Furthermore, the ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545(a)(3); SSR 96-98p. But, "[t]he relative weight to be given [to the] evidence is within the ALJ's discretion." *Chambliss v. Massanari*, 269 F.3d 520, 523 n. 1 (5th Cir. 2001) (citation omitted).

The claimant bears the burden of proof at the first four steps of the analysis. *Leggett*, 67 F.3d at 564. If this burden is met, the burden shifts to the Commissioner to show there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion

---

[1] All citations to C.F.R. in this opinion refer to the version in effect on June 1, 2016.

testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work. *Anderson*, 887 F.2d at 632-33.

In the present case, the ALJ found that Plaintiff had severe impairments of: fibromyalgia, degenerative disc disease, and osteoarthritis. (R:26). The ALJ also found Plaintiff had non-severe upper respiratory infection, urinary tract infection, hyperlipidemia, thyroid cyst, urinary frequency, gastroenteritis/colitis, depression, and anxiety. (R:26-30). The ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled one of the listed impairments. (R:30). The ALJ further found that the evidence provided little support for Plaintiff's testimony regarding her alleged side effects. (R:35). Upon considering the entire record, the ALJ determined that Plaintiff retained the RFC to perform light work with the following limitations: she can occasionally balance, stoop, kneel, or crouch, and cannot crawl or climb. (R:30).

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a Cashier II. (R:37). Consequently, the ALJ found that Plaintiff was not disabled from November 29, 2013, through the date of the ALJ's decision. (R:38).

### III. The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ erred in his credibility assessment of Plaintiff's subjective complaints regarding her symptoms. (Doc. 24:4). Specifically, Plaintiff claims that none of the ALJ's reasons for discrediting Plaintiff's complaints were based on facts supported by medical evidence and were, instead, based solely on the ALJ's opinion and conjecture. (*Id.*). Thus, Plaintiff

4

suggests that the ALJ's findings regarding her symptoms resulted in an inaccurate RFC, which tainted the remaining steps in the evaluation. (Doc. 24:5).

Symptoms are defined as the individual's own description or statement of her physical or mental impairment. SSR 16-3p. In determining disability, the ALJ must consider "all symptoms and the extent to which symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 [C.F.R. § 404.1529(a)] and SSR 96-4p." (R:30). The ALJ must determine (1) whether the individual has an MDI that could reasonably be expected to produce the individual's alleged symptoms; and (2) whether the intensity and persistence of those symptoms limit an individual's ability. SSR 96-7p; *see* 20 C.F.R. § 404.1529(c). However, an individual's statements of symptoms are not enough to establish disability. *Id.*

When allegations are not substantiated by objective medical evidence, the ALJ may consider evidence of the following in the record to assess the credibility of Plaintiff's subjective symptoms:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also* 20 C.F.R. § 404.1529(c)**.**

Plaintiff's credibility regarding subjective testimony is primarily for the ALJ to decide, but the decision must be based on substantial evidence. *Masterson*, 309 F.3d at 272. A review of the ALJ's decision demonstrates that the ALJ properly considered the Plaintiff's subjective symptoms in accordance with the above requirements.

Plaintiff testified that, due to her MDIs, she experienced fatigue and constant and intense pain in her lower back, waist, neck, arms, and hands, as well as numbness in her arms and legs. (R:31). She claimed that this pain was severe to the point that it affected her ability to sleep, and that it was alleviated by medication only "a little." (*Id.*). Plaintiff also claimed that her condition affected her ability to grip, handle, lift, stand, and sit. (*Id.*). She also stated that her condition and attendant limitations resulted in her requiring assistance from her husband to bathe, dress, groom, grab objects, cook, clean, and shop for groceries. (*Id.*).

The ALJ recognized that Plaintiff had an MDI that could reasonably be expected to cause the alleged symptoms. (R:31). The ALJ also recognized that medical notes by Dr. Stephen Untersee supported the following: Plaintiff's claims of back, neck, leg, and shoulder pain, and her testimony regarding her symptom-related limitations on her ability to complete household chores and stand or walk for long periods of times. (*Id.*). However, for reasons discussed below, the ALJ afforded little weight to Dr. Untersee's records. *See infra* Part IV. The ALJ found Plaintiff's allegations were unsupported by credible medical evidence and were largely inconsistent with the medical evidence and other evidence in the record. (R:31).

Contrary to Plaintiff's testimony regarding the persistence of her symptoms, Dr. Ramsey Hazboun's records show that Plaintiff was prescribed medication, which was later adjusted, and, subsequently, reported doing well as a result of the medication. (R:32, 308, 534).

Likewise, Dr. Shahnaz Habib's records showed that Plaintiff's symptom-related pain improved with medication, decreasing over a number of visits from a pain rating of ten out of ten in November 2014 to zero out of ten in August 2015. (R:32, 51, 372, 394, 398, 403, 559, 565, 568).

Additionally, records from Plaintiff's visits to a pain management clinic from September 2015 to March 2016 reflect that Plaintiff did not complain about the effectiveness of her medication, made no efforts to seek stronger medication, reported her fibromyalgia symptoms were relieved by medication, and denied symptoms, specifically neck pain. (R:33, 455-79, 670-796). Although Plaintiff complained of symptom-related lower back pain during her visits to the clinic in November of 2015, the ALJ found that, on her visit with Dr. Eric Sides six days later, Plaintiff described that same pain as mild and instead discussed her knee, which she reported as being "made better" with medication. (R:33, 464-68, 502).

The ALJ determined that Plaintiff's "medications were providing significant and adequate relief from her pain." (R:32-33). Under SSR 96-7p and 20 C.F.R. § 404.1529(c), a consideration of the effectiveness of medication is appropriate to determine the credibility of Plaintiff's subjective statements regarding her symptoms.

The ALJ also determined that the objective medical evidence—images of the Plaintiff's spine, knees, and right shoulder—revealed relatively mild or benign findings; thus, Plaintiff's symptoms are not as severe, persistent, or limiting as she alleged. (R:33-34).

Although Plaintiff complained of pain regarding the range of motion in her shoulders, hips, and spine, the ALJ found that records from Dr. Habib showed that her pain was "mild" or "moderate" and that her range of motion was only "mildly" or "moderately" reduced. (R:34). The ALJ also referred to records from Dr. Sides which demonstrated that, upon examination, Plaintiff exhibited full range of motion in her knees and upper extremities and had no neurological deficits. (R:34, 583-86). In reviewing records from Plaintiff's visits to the above-mentioned pain clinic, the ALJ found that the clinic noted that Plaintiff seemed to be in no acute distress, showed full range of motion, had normal sensation and reflexes, and had no strength deficits in her upper and lower extremities. (R:34, 455-79).

While reports by Dr. Nilesh Mehta support Plaintiff's claims of symptom-related limitations, the ALJ determined that Dr. Mehta's findings deserved little consideration and weight because of inconsistencies with the medical evidence discussed above. (R:34). Dr. Mehta reported that the Plaintiff complained of and exhibited a severely limited range of motion and resulting pain "all over." (R:34, 348-55). However, the ALJ compared these findings to the previously mentioned medical records and images, including reports by Dr. Habib, which showed that Plaintiff responded well to medication, had mild or benign findings, exhibited only a mild or moderate loss in her range of motion, and reported only mild resulting pain. (R:34).

Regarding Plaintiff's activities of daily living, the ALJ noted that, in September and December of 2015, Plaintiff's reported physical activity differed from that of her testimony. (R:34). Plaintiff testified that she required assistance from her husband in a range a daily activities, but, in late 2015, she reported that she was independent with ambulation, transfers, and many of these same daily activities. (R:34, 464, 479). The ALJ also found that Plaintiff's claims of her need for her

husband's assistance were inconsistent with her claim that her husband was disabled. (R:34). In light of these conflicting claims, the ALJ dismissed Plaintiff's testimony because the reports discussed above seemed "more consistent" with the other medical evidence in the record. (*Id.*).

The ALJ also dismissed Plaintiff's subjective complaints of symptoms regarding dizziness, nausea, stomach pain, and constipation. (R:35). Though early records partially support Plaintiff's testimony regarding these symptoms, subsequent records show that, in later examinations, Plaintiff either failed to complain of these symptoms or outright denied them. (R:35, 323-30, 372-75, 403-07, 426, 430, 453-529, 535-37, 570-73, 583-86, 671-796). Thus, in light of the above inconsistencies, the ALJ found that the medical evidence in the record indicated Plaintiff's alleged side effects are not particularly severe, persistent, or limiting. (R:34).

Because the ALJ has the sole discretion of resolving conflicts in the evidence and there is substantial evidence to support them, his determinations regarding Plaintiff's alleged symptoms are entitled to deference. *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983). The Court does not find that the ALJ committed a reversible error in determining that Plaintiff's subjective complaints were not entirely credible. Thus, Plaintiff is not entitled to relief on this claim.

## *IV. The ALJ properly evaluated the Medical Opinion Evidence*

Plaintiff argues that, because the ALJ erred in not giving proper consideration to the opinion evidence in the record, the RFC assessment is inaccurate and unsupported by substantial evidence. (Doc. 24:8). Specifically, Plaintiff contends that the ALJ failed to give proper weight to Plaintiff's examining and treating source, Dr. Untersee, and state agency psychological consultants, Drs. Mischca Scales and John Germain. (Doc. 24:6-7). Plaintiff complains that the ALJ gave greater

weight to the opinions of non-examining state agency physicians, and, as a result, disregarded medical opinions that support a finding that Plaintiff is disabled. (Doc. 24:5). Plaintiff asserts that the ALJ engaged in the "picking and choosing" of evidence that supported his opinion solely because they "seem[ed] consistent" with the record as a whole. (Doc. 24:5-6).

In considering medical opinion evidence, the ALJ should generally give greater weight to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). To give the treating source's opinion controlling weight, the ALJ must find that the opinion on the issues of the nature and severity of the impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with the other substantial evidence in the record. *Id.* However, if the ALJ finds the treating sources' opinions are not deserving of controlling weight, the relative weight of the sources' opinions are assessed through the application of the following factors:

1. Length of treatments and frequency of examination;

2. Nature and extent of treatment relationship;

3. Support a medical source presents for its opinion, in terms of objective medical evidence and explanation;

4. Consistency of the opinion with the record as a whole;

5. Specialization of the treating physician; and

6. Other factors (e.g. the amount of understanding of the disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in the case record).

20 C.F.R. § 404.1527(c)(2-6).

### *(A) Dr. Untersee's Opinion Evidence*

The Court finds that the ALJ did not err in assigning little or no weight to Dr. Untersee's opinion evidence. Controlling weight may only be given to a "treating source," and a treating source can be a licensed physician, psychologist, or other acceptable medical source as defined under 20 C.F.R. § 404.1502. 20 C.F.R. § 404.1527(c)(2). Chiropractors are not recognized as "acceptable medical sources." 20 C.F.R. § 416.913. Chiropractors are expressly listed as "other sources" whose opinions may be used to show the severity of an impairment and how it affects Plaintiff's ability to work. *See* 20 C.F.R. § 416.913(d)(1). A chiropractor's opinions are not entitled to controlling weight and should be given less weight than the opinions of medical doctors. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (*per curium*).

Dr. Untersee opined that Plaintiff is limited to less than a sedentary range of work. (R:862-64). However, the Commissioner is responsible for making the determination or decision of Plaintiff's RFC. 20 C.F.R. § 404.1527(d)(1). In reviewing the opinion of "other sources" regarding an issue reserved to the Commissioner, the ALJ will not give special significance to that opinion. 20 C.F.R. § 404.1527(d)(3). Here, the ALJ appropriately noted that whether a claimant is capable of working is a conclusion reserved solely to the Commissioner. (R:36).

In assessing the weight of Dr. Untersee's opinion regarding Plaintiff's ability to work, the ALJ considered the requisite factors. The ALJ noted that Dr. Untersee had not seen Plaintiff for nearly three years at the time Dr. Untersee gave his opinion and that Dr. Untersee's opinions from 2007 and 2008 were irrelevant as they were rendered years before the period at issue and were inconsistent with previously discussed treatment records that showed Plaintiff obtained significant relief from her symptoms in more recent years with medications. (R:36-37, 860, 862-66); *see supra* Part III. The ALJ noted that Dr. Untersee admitted that parts of his opinion did not pertain in any way

11

to the alleged treatment he provided to Plaintiff. (R:36, 862-66). Furthermore, the ALJ noted that Dr. Untersee cited no support for Plaintiff's alleged limitation regarding her ability to see, hear, and speak. (R:36, 862-66). Finally, the ALJ determined that, while Dr. Untersee cited to Plaintiff's lumbar spine MRI from 2005, that MRI provided little support for Dr. Untersee's opinion. (R:36). For reasons discussed above regarding Plaintiff's suggestive symptoms, the ALJ reasoned that Dr. Untersee's opinion was inconsistent with Plaintiff's more recent images and Dr. Sides' reports. (*Id.*); *see supra* Part III.

Plaintiff argues that, as per SSR 96-2p, a medical opinion that is *well*-supported by medically acceptable clinical and laboratory diagnostic techniques is not required to be *fully* supported by that evidence. (Doc. 24:7). However, Plaintiff's argument is unfounded. The standard for which Plaintiff argues is only applicable to medical opinions by a treating source. *See* SSR 96-2p; 20 C.F.R. § 404.1527(d)(2). As previously determined, Dr. Untersee is not a treating source, and, therefore, his opinion is not entitled to the deferential standard.

The Court finds that the ALJ properly deemed Dr. Untersee a non-treating source and accordingly evaluated Dr. Untersee's opinions consistent with the factors and requirements listed in 20 C.F.R. § 404.1527(c)(2-6). Thus, the ALJ did not err in his assessment of the weight of Dr. Untersee's opinion because his determination is supported by substantial evidence.

### (B)     Drs. Rehman and Reid's Opinion Evidence

Plaintiff complains that the ALJ erred in giving more weight to non-examining sources, Drs. Rehman and Reid, than to examining sources, Drs. Scales and Germain. (Doc. 24:5). In support, Plaintiff cites *Villa v. Sullivan*, 895 F.2d 1019 (5th Cir. 1990), which determined that more weight

should be given to the opinion of an examining source than to a non-examining source. (Doc. 24:50 Nonetheless, Plaintiff's argument is flawed.

The ALJ must consider the opinions of state agency medical or psychological consultants; but he is not bound by any findings made by those consultants. 20 C.F.R. § 404.1527(e)(2)(i). Instead, the ALJ must evaluate those findings using the relevant factors in 20 C.F.R. § 404.1527(a-d) and explain the weight assessed. 20 C.F.R. § 404.1527(e)(2)(ii).

It is not an error for the ALJ to assign more weight to a non-examining source than to an examining source when there is "substantial justification" by way of the evidence. *See Huey v. Comm'r of Soc. Sec.*, No. 4:15-CV-037-SAA, 2015 U.S. Dist. LEXIS 162979, at *11-12, 2015 WL 8056041 at *1-5 (N.D. Miss. Dec. 4, 2015). After weighing all of the evidence, the *Huey* ALJ explained and found that the evidence supported a conclusion that was contrary to the examining source's opinion, and, therefore, he assigned greater weight to the opinions of the non-examining sources. *Huey*, 2015 U.S. Dist. Lexis 162979, at *12-13, 2015 WL 8056041 at *4-5.

Like the ALJ in *Huey*, for reasons explained below, the ALJ in the present case appropriately determined that the non-examining sources' opinions were deserving of more weight than the examining sources' opinions because of their consistency with the record as a whole. (R:29, 30, 35). Having explained his weight assessment, the Court finds that there is substantial justification for the ALJ's weight assessment, that he acted in accordance with the requirements of 20 C.F.R. § 404.1527(e)(2)(ii), and that Plaintiff's claim is without merit.

### (C)     Drs. Scales and Germain's Opinion Evidence

Plaintiff argues that the ALJ's decision to give little weight to the opinions of the state agency psychological consultants was "an unfounded opinion, not based on any evidence in the record." (Doc. 24:6). The Court disagrees.

The ALJ found that the consultants' opinions were primarily based on a report prepared by Dr. Peter Fernandez, which the ALJ discounted upon a review of other medical evidence in the record that showed that Plaintiff responded well to medication and sought no specialized mental health treatment. (R:27-30). The ALJ also noted that the consultants' opinions were inconsistent with the remaining evidence in the record that was submitted subsequent to their opinions. (R:29).

The consultants opined that Plaintiff's mental impairments cause her to experience moderate limitations in the functional areas of daily living, social functioning, and concentration. (R:29, 58-82, 84-97). However the ALJ found no more than a "mild limitation" in all three functional areas. (R:28-29).

Regarding daily living, the Plaintiff reported having difficulty with and needing assistance with a range of daily activities. (R:28, 222-30, 247-57). In reviewing that claim, the ALJ found that it was inconsistent with other reports which demonstrated that Plaintiff's symptoms of anxiety and depression respond well to medication and that Plaintiff reported being independent in a range of many of the same daily activities. (R:27-28, 307-08, 327, 379-82, 394-407, 455-61, 464-68, 469-72, 479, 544-46, 672-79). And, as previously discussed, the ALJ found these subsequent reports were deserving of greater weight because they "seem[ed] far more consistent" with medical evidence pertaining to Plaintiff's physical impairments. (R:28); *see supra* Part III.

As to social functioning, Plaintiff alleged she has limited social activity and difficulty getting along with others. (R:29, 222-30, 247-54). As above, the ALJ made note of Plaintiff's medication

14

and its effectiveness on Plaintiff's symptoms and of Plaintiff's continued engagement in activities involving social contact with others. (R:29).

Concerning concentration, Plaintiff asserts that she has memory problems and difficulty concentrating. (R:29). Again, as above, the ALJ made note of Plaintiff's medication and its effectiveness on Plaintiff's symptoms. (*Id.*). The ALJ further noted that, upon examination, the Plaintiff was repeatedly reported to be alert and oriented with no apparent impairment of short or long-term memory. (R:29, 454-529). The ALJ also determined that Plaintiff's engagement in various activities was evident of her ability to focus. (R:29, 251).

For these reasons, the ALJ explained and determined that Plaintiff has only a mild limitation in the above functional areas. (R:30). Thus, the ALJ acted in accordance with the requirements of 20 C.F.R. § 404.1527(e)(2)(ii) by evaluating the sources' opinions under the factors listed in 20 C.F.R. § 404.1527(a-d) and explaining their given weight in detail. (R:27-30).

Though the ALJ determined that the consultants' opinions were inconsistent with the remaining medical evidence and, thus, gave them little weight, the Court finds that the ALJ did not err in his assessment of weight because there was substantial evidence in the record to support his findings. *See Huey*, 2015 U.S. Dist. Lexis 162979, at *12-15.

For all of the aforementioned reasons, the Court finds that Plaintiff is not entitled to relief on her claims regarding the ALJ's weight assessment of the medical opinion evidence.

### *V. The ALJ Properly Determined Plaintiff's Residual Functional Capacity*

The ALJ has the sole responsibility of determining Plaintiff's RFC, which is the most she can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the determination, the ALJ must (1) consider all the evidence in the record; (2) determine Plaintiff's abilities despite her physical and mental limitations, and (3) consider the limiting effects of Plaintiff's severe and non-severe impairments and any related symptoms. *See* 20 C.F.R. §§ 404.1545, 404.1529. It is also the sole responsibility of the ALJ to weigh the evidence. *Chambliss*, 269 F.3d at 523. However, the burden of providing and identifying medical and symptom-related evidence to prove disability rests on Plaintiff. *See* 42 U.S.C. §423(d)(5); 20 C.F.R. § 404.1512(c). To be sufficient in establishing disability, the evidence provided must be (1) from an acceptable medical source; or (2) Plaintiff's subjective complaints that are supported by objective medical evidence in the record. *See* 20 C.F.R. §§ 404.1508, 404.1513(a), 404.1528, 404.1529. In determining the RFC, the ALJ need not include limitations that he finds are unsupported by the evidence in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Plaintiff claims that the ALJ's decision regarding Plaintiff's disability should be remanded because it is unsupported by substantial evidence. (Doc. 24:10). Plaintiff asserts that the ALJ (1) failed to properly review the records; (2) failed to properly accommodate all of Plaintiff's impairments; and (3) relied on a faulty RFC to determine that Plaintiff could perform her past work. (*Id.*). Specifically, Plaintiff contends that the record evidence and opinions of Dr. Untersee support her inability to "perform six hours of standing and/or walking in an eight hour day . . . as required by light work." (Doc. 24:8).

In response, the Commissioner argues that Plaintiff's supporting evidence consists of subjective statements and the unsupported statements of a non-acceptable source. (Doc. 25:10). The

Commissioner asserts that, because the weighing of evidence to determine the RFC is the sole responsibility of the ALJ, the ALJ's findings based on the totality of the evidence cannot be overcome by Plaintiff's uncorroborated statements. (Doc. 25:9-10). Thus, the Court should find substantial evidence supporting of ALJ's decision and affirm that decision.(Doc 25:10). The Court agrees.

Plaintiff cites to multiple records indicating that she experiences symptoms that interfere with her ability to perform various tasks and limit her performance in the functional areas discussed above. *See supra* Part IV, Section C; (Doc. 24:9). However, the following records provide substantial evidence for the ALJ's dismissal of those claims: records from Dr. Hazboun, Dr. Habib, Dr. Sides, and Dr. Mehta; records from Plaintiff's visits to a pain treatment clinic; and Plaintiff's own subsequent testimony. *See supra* Parts III-IV.

Nonetheless, Plaintiff contends that, pursuant to 42 U.S.C. § 423(d)(5)(a), she is only required to produce objective medical evidence of an underlying impairment which could *reasonably be expected* to produce the alleged pain or symptoms and that she is not required to produce objective medical evidence of the pain itself, nor its severity. (Doc. 24:9). However, Plaintiff's burden of production is not in question, and, thus, Plaintiff's reasoning is ineffectual. While it is true that the ALJ must determine if Plaintiff has an MDI that could reasonably be expected to produce the individual's alleged symptoms, the ALJ must also determine whether the intensity and persistence of those symptoms limit Plaintiff's capacity to work. 20 C.F.R. § 404.1529(c). In determining intensity and persistence, if Plaintiff feels disposed to not provide supporting objective medical evidence under 42 U.S.C. § 423(d)(5)(a), then the ALJ may look to other record evidence to assess the credibility of Plaintiff's subjective symptoms. *Id.*; *see supra* Part III. Having previously

found that the ALJ did not err in his assessment of Plaintiff's subjective symptoms, the Court finds that the ALJ did not commit an error in excluding them in the RFC assessment. *See Morris*, 864 F.2d at 336.

Plaintiff further cites to the opinions of Dr. Untersee which state that Plaintiff has a wide range of progressive limitations. (Doc. 24:9). But, because Dr. Untersee is not an acceptable medical source, his opinion is not entitled to any special consideration. *See supra* Part IV, Section A. Thus, while Dr. Untersee's opinion may be used to show the severity of an impairment and how it affects Plaintiff's ability to work, the ALJ maintains the sole responsibility of determining the weight of the evidence. *Id.*; *see also Chambliss*, 269 F.3d at 523. For these reasons, the Court finds that the ALJ did not err in affording little weight to Dr. Untersee's opinion in the RFC assessment.

The foregoing demonstrates that there is substantial evidence to support the ALJ's RFC determination. In assessing the RFC, the ALJ included only the limitations he found to be supported by the record and properly rejected those that were not. The Court concludes that the ALJ properly executed his discretion and did not commit the assigned errors.

## CONCLUSION

Based on the foregoing, the Court hereby **ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED and ENTERED on June 20, 2017.**

_____
**ROBERT F. CASTANEDA**
**UNITED STATES MAGISTRATE JUDGE**